UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

99 MAY 19 AM 10: 52

U.S. DISTRICT COURT
N.D. OF ALABAMA

DAKCOLL, INC., a North )
Dakota corporation d/b/a as )
DAKOTA COLLECTIBLES, )
                                    )
        Plaintiff,                  )
                                    )
vs.                                 )    Civil Action No. CV 96-S-1970-NE
                                    )
MICHAEL B. HARTSHORNE, d/b/a )
THE LOGO SHOP,                      )
                                    )
        Defendant.                  )

ENTERED

MAY 1 9 1998

## MEMORANDUM OPINION

        This action is before the court on plaintiff's motion for

default judgment or, in the alternative, for summary judgment, and

request for a permanent injunction.  Upon consideration of the

pleadings, briefs, and evidentiary submissions, this court

concludes the motion for default is due to be denied, but

plaintiff's motion for summary judgment is due to be granted in

part and denied in part.  Plaintiff's request for a permanent

injunction also is due to be denied.

### I.  SUMMARY OF FACTS

        DakColl, Inc. is a North Dakota corporation engaged in the

business of creating and marketing embroidery designs and patterns

under the name Dakota Collectibles ("Dakota").  (Verified Complaint

¶ 7.)   The company creates embroidery designs and patterns based

upon its own copyrighted artwork, and, copyrighted artwork licensed

from others.  (Id. ¶¶ 7, 15.)  Dakota has created software programs

from this artwork, which are used by computer-driven sewing machines to embroider the copyrighted images onto articles of clothing or other fabrics. (*Id.* ¶ 9.) The artwork images and computer software programs are made available to customers through a catalog published annually. (*Id.* ¶ 15.) Customers may order single designs, groups of designs, or the entire set of 8,500 Dakota designs from the catalog. (*Id.* ¶ 16.) Purchasers of a Dakota design, or set of designs, receive the right to use the copyrighted artwork and software in their business, but may not copy the artwork or software for any other purpose or use. (*Id.* ¶ 18.)

Michael B. Hartshorne,[1] a resident of Huntsville, Alabama, owns and operates "The Logo Shop." Hartshorne is engaged in the business of creating software for computer-controlled embroidery machines, allowing them to reproduce digitized designs onto articles of clothing or other material. (Hartshorne Affidavit ¶ 7; Complaint ¶ 20.) Dakota alleges that Hartshorne illegally obtained a copy of an entire set of Dakota's 1994 copyrighted embroidery designs, a copy of which he then sold to "The Wicked Stitch," an embroidery shop located in Orlando, Florida, for $800. (Complaint ¶¶ 21-29.) Hartshorne admits receiving "some Dakota Collectible designs." (Hartshorne Affidavit ¶ 8.) He denies, however, that he used the designs in connection with his own work, or that he

---

[1]The complaint and all other filings identify defendant as Mike Heartshore. However, by order entered October 16, 1997, the court granted plaintiff leave to amend future filings to reflect defendant's true name: Michael B. Hartshorne.

2

solicited sales of the designs. (*Id.*) He also admits that he "sold to a company called The Wicked Stitch many designs which were made up of 1994 Dakota designs...." (Hartshorne Affidavit, Exhibit 1 at 1.)

Dakota discovered Hartshorne's alleged infringement of its copyrighted material in October of 1995 through a sting operation conducted by its own investigators, and described by Hartshorne[2] as follows:

> Several months prior to the filing of this lawsuit, I was contacted by someone requesting to purchase from me copies of disks relating to Dakota Collectibles. At first I was reluctant to discuss this in any way with the person. However, due to their persistence in pursuing me to obtain copies of any materials I had in my possession related to Dakota Collectibles, I finally consented to sell him what I had. This was not a 1994 Dakota Collectibles Collection to my knowledge. The total obtained was $800.00. I did not advertise the sale of this material, nor did I solicit or in any way contact the person who made the purchase from me. As I noted, I have not made any attempts to make such sales in the past nor have I made any other sales of Dakota Collectibles including, without limitation, "Written in Stitches". I would not have made the sale in question in this case but for the persistence of the person I now know to have been an investigator for Dakota Collectibles. It has never been my intention to personally utilize, or goal to profit in any way from materials owned by Dakota Collectibles. The materials which I had in my possession, which were supplied to The Wicked Stitch and which were seized did not contain copyright symbols or any restrictive legends or legal notices on them. There were no copyrights or restrictive legends or legal notices on them when I received them. I have never removed any copyright symbols or an[y] restrictive legends or legal notices from any Dakota collectibles designs.

---

[2] On a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party. *See* Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

3

(Hartshorne Affidavit ¶ 10.)

Following its investigation, Dakota filed a verified complaint seeking damages and injunctive relief on July 30, 1996. The complaint alleges copyright infringement based upon Hartshorne's unauthorized copying and distribution of Dakota's copyrighted designs and computer programs, and contributory copyright infringement based upon unauthorized copying and distribution by Hartshorne's customers. Dakota seeks both a permanent injunction and an accounting.

By order entered August 5, 1996, this court granted plaintiff's motion for temporary restraining order, directing Hartshorne to refrain from any acts of infringement against Dakota's copyrights, or any acts which could encourage infringement by others. That order authorized the United States Marshall to identify, search for, seize, and impound

> any and all items in any way constituting, displaying, embodying, storing, fixing, or containing infringing copies of Dakota Collectibles' copyrighted materials, or any derivative works thereof, ... including ... computer disks, ... any other tangible media by which Dakota Collectibles' copyrighted materials can be perceived, whether with or without the aid of any machine or other device.

(Order entered August 5, 1996 (Doc. No. 4) at 4.) Federal Marshals served and executed the order on August 6, 1996. The parties stipulated to the entry of preliminary injunctive relief, and an order to that effect was entered on August 9, 1996 (Doc. No. 8). Plaintiff now moves the court for a default judgment as to all

4

claims or, in the alternative, for summary judgment as to count one (copyright infringement), and for a permanent injunction as requested in count three.[3]

## II. PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Dakota requests default based on Hartshorne's alleged failure to file an answer to the complaint. Federal Rule of Civil Procedure 55 permits entry of a default as the consequence for failure to comply with Rule 13, which requires an answer within twenty days after service of the summons and complaint.

Summons and complaint were served on Hartshorne on August 5, 1996. Proceeding *pro se*,[4] Hartshorne responded to the complaint *via* a facsimile transmission on August 14, 1996. In that fax, Hartshorne admitted the allegations in paragraphs 1-20 of the complaint, but denied certain others. (*See* Hartshorne Affidavit, Exhibit 1.) That document was not filed with the court, however. Even so, Dakota's counsel admits that he received the fax on the date of its transmission.

"The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. Nov. 5, 1981)(citing

---

[3]Plaintiff does not seek summary judgment as to count two (contributory infringement), or as to count four (accounting).

[4]Although the court finds no notice of appearance in the record, Hartshorne apparently is now being represented by attorney Roderic G. Steakley. Steakley's signature first appears on a pleading entitled "Defendant's Evidentiary Submission in Opposition to Plaintiff's Motion for Default Judgment or, in the Alternative, for Summary Judgment and for a Permanent Injunction (Doc. No. 18)," filed on October 29, 1997.

*Faretta v. California*, 422 U.S. 806, 834 n.46, 95 S.Ct. 2525, 2540 n.46, 45 L.Ed.2d 562 (1975)). Nevertheless, the United States Supreme Court instructs that pleadings drafted by *pro se* litigants should be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). Giving due deference to Hartshorne's *pro se* status, the court finds his timely, but inartful facsimile response to the complaint to be a sufficient answer. Plaintiff's motion for default judgment therefore is due to be denied.

### III. PLAINTIFF'S ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to

6

find for the nonmoving party."  *Id.*

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact.  *Id.*  In determining whether this burden is met, the court must view the evidence "and all factual inferences arising from it in the light most favorable to the nonmoving party."  *Id.*  (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)).

Once the movant's initial burden is met, "the burden shifts to the nonmovant to 'come forward with specific facts showing that there is a genuine issue for trial.'"  *Id.*  (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).  In meeting its burden, "the nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole."  *Tipton v. Bergrohr GMBH-Siegen,* 965 F.2d 994, 998 (11th Cir. 1992)(citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

"'The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'"  *Tipton,* 965 F.2d at 999 (quoting *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513).  Even so, a "mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990)(citing

7

*Anderson,* 477 U.S. at 242, 106 S.Ct. 2505). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (citation omitted).

Although summary judgment is ordinarily disfavored in copyright cases, "when the evidence is so overwhelming that a court would be justified in ordering a directed verdict at trial, it is proper to grant summary judgment." *Columbia Pictures v. Landa,* 974 F. Supp. 1, 7 (C.D. Ill. 1997)(citations omitted).

**B. Copyright Infringement**

To establish a claim of copyright infringement, Dakota must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991); *see also BellSouth Advertising & Publishing Corp. v. Donnelley Information Publishing, Inc.,* 999 F.2d 1436, 1440 (11th Cir. 1993)(en banc), *cert. denied,* 510 U.S. 1101, 114 S.Ct. 943, 127 L.Ed.2d 232 (1994).

To "satisfy *Feist*'s first prong, a plaintiff must prove that the work ... is original and that the plaintiff complied with applicable statutory formalities." *Lotus Development Corp. v. Borland International, Inc.,* 49 F.3d 807, 813 (1st Cir. 1995), *aff'd,* 516 U.S. 233, 116 S.Ct. 804, 133 L.Ed.2d 610 (1996)(citation omitted).

8

In judicial proceedings, a "certificate of registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c) (1977). "Once the plaintiff produces a certificate of copyright, the burden shifts to the defendant to demonstrate why the claim of copyright is invalid." *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996).

Dakota has presented evidence of certificates of registration for 58 of its copyrighted designs and software, all obtained between September 7, 1990 and January 16, 1996. (Verified Complaint, Exhibit A.) Moreover, Hartshorne admitted in his answer to the complaint that Dakota holds valid copyrights for the artwork and computer software contained in its collections.[5] Thus, *Feist*'s first prong is met.

To meet the second prong of the *Feist* test, Dakota must present evidence demonstrating that Hartshorne copied its copyrighted materials: *i.e.*, that he copied Dakota's protected artwork, or Dakota's computer programs designed to reproduce its protected artwork, or both. *See Feist*, 499 U.S. at 361, 111 S.Ct. at 1296. The term "copying" is a "shorthand reference" for any

---

[5]Because "originality" is an explicit requirement for a valid copyright, Hartshorne's concession that Dakota's copyrights are valid conclusively resolves the issue of whether Dakota's designs and computer programs are sufficiently "original" to garner protection under the Copyright Act. *See* 17 U.S.C. § 102(a) ("Copyright protection subsists ... in original works of authorship fixed in any tangible medium of expression....").

9

infringement of the copyright holder's exclusive rights as set
forth in 17 U.S.C. § 106.   *Gates Rubber Co. v. Bando Chemical
Industries, Ltd.*, 9 F.3d 823, 832 n.6 (10th Cir. 1993)(citing *Ford
Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 291 (3d
Cir.), *cert. denied* 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324
(1991)).   Section 106 provides:   "the owner of copyright ... has
the exclusive rights to do and to authorize any of the following:
(1) to reproduce the copyrighted work in copies ...; [and] (3) to
distribute copies ... of the copyrighted work to the public by sale
or other transfer of ownership...."   Thus, "[p]ublic distribution
of a copyrighted work is a right reserved to the copyright owner,
and usurpation of that right constitutes infringement."   *Cable/Home
Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 843
(11th Cir. 1990)(citing 17 U.S.C. § 106(3)).

   "[P]roof of copying may be shown either by direct evidence,
or, in the absence of direct evidence, it may be inferred from
indirect evidence demonstrating that defendant had access to the
copyrighted work and that there are probative similarities between
the allegedly infringing work and the copyrighted work."   *Mitek
Holdings, Inc., v. Arce Engineering Co., Inc.*, 89 F.3d 1548, 1554
(11th Cir. 1996)(citations omitted).

   Hartshorne does not deny that he had access to "some" of
Dakota's 1994 designs:   "Prior to the filing of the lawsuit against
me, I did receive some Dakota Collectible designs."   (Hartshorne

10

Affidavit ¶ 8 (emphasis supplied).)   In his answer, Hartshorne
stated "I would say that most of ... my customers have supplied me
with Dakota designs on one occassion [sic] or another."   (Answer at
1.)   This is not a case, therefore, where defendant's access to the
copyrighted materials is a matter for dispute.

Moreover, Hartshorne admits selling some of those designs to
an embroidery shop acting as a front for Dakota's undercover
investigator:   "I admit the allegations that I have sold to a
company called The Wicked Stitch many designs which were made up of
1994 Dakota designs...."   (Answer at 1.)   In addition, Troy Grothe,
one of Dakota's investigators, attests that he inspected the 83
diskettes received *via* mail from Hartshorne, and found that 81 of
them contained Dakota Collectibles' designs.[6]   (Grothe Affidavit ¶¶
9-10.)   Grothe's unrebutted testimony establishes the necessary
probative similarity between Dakota's copyrighted works and the
material sold by Hartshorne.

Accordingly, the court finds that the only inference that
reasonably can be drawn from the uncontroverted evidence presented
by plaintiff is that Hartshorne infringed "some" of Dakota's
copyrights.   Hartshorne now bears the burden of presenting
"specific facts showing that there is a genuine issue for trial."
*See Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

---

[6]Grothe averred that "81 of the computer disks contained 6,084 separate,
copyrighted Dakota Collectibles' designs." (Grothe Affidavit ¶ 10.) It remains
unclear whether the diskettes sold by Hartshorne also contained any of Dakota's
copyrighted computer programs, or whether the designs and corresponding computer
programs are effectively one and the same.

11

Hartshorne argues[7] in brief that he was "entrapped," that there is no evidence he "copied, reproduced, or otherwise recreated copyright material owned by Plaintiff," and no evidence "of any efforts by Defendant to market or solicit sales of the alleged copyright materials." (Defendant's Brief in Opposition to Summary Judgment at 5-6.) Those arguments are unavailing.

As already discussed, the term "copying" is given broad meaning, and includes any infringement of the exclusive rights granted to a copyright owner, regardless of whether actual copying occurs or not. Distribution of copyrighted material is the exclusive right of the copyright owner, and Hartshorne's admitted sale of Dakota designs to The Wicked Stitch violated that right. Moreover, it is well established that even innocent infringement is actionable pursuant to 17 U.S.C. § 501(a). *E.g., Buck v. Jewel-LaSalle Realty Co.*, 283 U.S. 191, 198, 51 S.Ct. 410, 411, 75 L.Ed. 971 (1931) ("Intention to infringe is not essential under the [Copyright] Act"). Therefore, neither Hartshorne's professed reluctance to engage in the sale, nor his avoidance of active solicitation, is relevant to the issue of whether he infringed Dakota's copyrights.

On the other hand, Hartshorne also argues that

there is no proof that the software obtained by Plaintiff from Defendant would reproduce designs which were protected by Plaintiff's copyrights. Hence, there is a failure of proof to establish that identical materials

---

[7]The court notes that defendant cites no case law in support of its opposition to summary judgment.

12

> which were subject to Plaintiff's copyright protection
> were transferred in any fashion by Defendant. Further,
> the ultimate issue is whether the software transferred by
> Defendant in response to Plaintiff's solicitation would
> in fact reproduce offending embroidered designs. It is
> the embroidered design, and the capacity to produce such
> embroidered design through an embroidery machine that is
> protected.      There is  no  evidence that  anything
> transferred by Defendant could, in fact, reproduce any
> offending designs.

(Defendant's Brief in Opposition to Summary Judgment at 7.)
Although the court finds conclusive evidence that Hartshorne
infringed at least some of Dakota's copyrights, the court agrees
that the current record is unclear on precisely which, or how many,
of those copyrights Hartshorne's software may have infringed.
Dakota presents certificates of registration for only 58 of its
designs, yet claims that 6,084 copyrighted designs were contained
on the diskettes sold by Hartshorne. Plaintiff is not entitled to
sue for infringement of designs which it has not yet registered.
17 U.S.C. § 411(a) ("no action for infringement of the copyright in
any work shall be instituted until registration of the copyright
claim has been made in accordance with this title"). Moreover,
plaintiff has not established whether the diskettes Hartshorne sold
contained designs and software for reproducing those designs, or
only designs. Nevertheless, those uncertainties do not raise a
genuine issue on the question of infringement. They are more
appropriately considered in regard to damages.

In summary, Hartshorne admits Dakota holds valid copyrights in
its designs and software. He admits that he obtained some Dakota

13

designs from unknown sources. He admits that he sold "many designs which were made up of 1994 Dakota designs." Those admissions conclusively establish copyright infringement.

## C.   Statutory Damages

In lieu of actual damages, plaintiff has elected to request an award of statutory damages pursuant to 17 U.S.C. § 504(c). Subpart (1) of that statute authorizes damages for each infringement of a copyrighted work "in a sum of not less than $500 or more than $20,000 as the court considers just." Subpart (2) permits enhancement of that sum upon proof "that the infringement was committed willfully," and reduction upon a showing that the infringer was "not aware and had no reason to believe that his or her acts constituted an infringement of copyright." 17 U.S.C. § 504(c)(1),(2). "The district court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Columbia Pictures Industries, Inc. v. Landa*, 974 F. Supp. 1, 15 (C.D. Ill. 1997)(citations omitted). The court finds several factual disputes remain on the current record.

Plaintiff asserts Hartshorne is liable for 6,084 separate infringements of copyright, and seeks the minimum statutory recovery of $500 per infringement, or $3.042 million. A determination of Hartshorne's intent, however, is necessary before this court can ascertain whether judgment in that, or some lesser

14

amount is appropriate. Such an assessment of intent is inherently an issue of fact, best reserved for trial. *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1020 (7th Cir. 1991). Significantly, under § 405(b), a copyright owner is precluded from recovering any amount of actual or statutory damages against an "innocent infringer, *i.e.*, one who relies on a copy from which notice was omitted and ceases the infringing actions upon receiving notice of the copyright registration." *Donald Frederick Evans & Associates, Inc. v. Continental Homes, Inc.*, 785 F.2d 897, 905 (11th Cir. 1986)(internal quotation marks omitted). Hartshorne presents sufficient evidence on that point to avoid summary judgment on the amount of damages.

Moreover, plaintiff's evidence fails to conclusively demonstrate how many infringements Hartshorne committed with his single sale to "The Wicked Stitch." Plaintiff may only recover statutory damages for infringement of those copyrights which were properly registered before this lawsuit was commenced. *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990)("plaintiff copyright owner must have registered the copyright prior to the infringement in order to obtain statutory damages")(citing 17 U.S.C. § 412). Yet, as already noted, the current record contains evidence of only 58 certificates of registration.

In a similar vein, factual issues must be resolved to

15

determine whether the sale of one "1994 full set of Dakota
Collectibles' designs"[8] constitutes a single infringement or
multiple infringements.  The Eleventh Circuit instructs that the
proper analysis "focuses on whether each expression has an
independent economic value and is, in itself, viable."  *MCA
Television Ltd. v. Feltner*, 89 F.3d 766, 769 (11th Cir.
1996)(citations omitted).  The current record reveals insufficient
evidence to permit such an inquiry.  Accordingly, the court finds
that there are genuine issues of material fact which prevent
summary judgment as to the amount of damages.

**D.   Permanent Injunction**

The Copyright Act authorizes courts to grant "final
injunctions on such terms as it may seem reasonable to prevent or
restrain infringement of a copyright."  17 U.S.C. § 502.  A
copyright holder is normally entitled to a permanent injunction
upon a showing of "past infringement and a substantial likelihood
of future infringements."  *Pacific and Southern Co., Inc. v.
Duncan*, 744 F.2d 1490, 1499 (11th Cir. 1990).

This court has previously entered a preliminary injunction
providing the relief sought by plaintiff.  (*See* Order entered
August 9, 1996.)  That injunction remains in effect.  Resolution of
the damage issues discussed *supra* should illuminate the issues
pertinent to a finding that a "substantial likelihood of future

---
[8]The phrase is used by plaintiff throughout the record.  *See, e.g.*, Grothe
Affidavit ¶ 4.)

16

infringements" exists in this case.   Accordingly, the court declines to grant plaintiff's request for a permanent injunction at this time.

### IV.   CONCLUSION

For the foregoing reasons, plaintiff's motion for default judgment is due to be denied.  Plaintiff's alternative motion for summary judgment is due to be granted in part, and denied in part. Plaintiff's request for a permanent injunction is due to be denied. An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this _18th_ day of May, 1998.

United States District Judge